The judgment of the court was pronounced by
Slidell, J.
The plaintiffs allege in their petition, that in 1845 they obtained a judgment in the Circuit Court of the United States for the Southern District of Mississippi, against John Lane and W. W. Chapman in solido, for $2818 86, and costs of suit amounting to $159. That on the 20th December, 1845, this judgment was made executoiy, by a decree of the District Court for the parish of Madison, against John Lane, who then owned a large estate in said parish. That a copy of the order was recorded in the mortgage office on the 30th December, 1845. That the judgment so made executory acquired by registration the effect of a judicial mortgage on John Lane’s estate there situate. That in 1846 John Lane sold his said estate, being a plantation and slaves, and the stock &c., attached thereto, to E. M. Lane, who by,the notarial act of sale took the estate, subject to certain enumerated mortgage debts, including that due to the plaintiff, and also bound himself to apply the products of the estate to their satisfaction. That he has realised $25,000 from crops; but has paid no part of John Lane’s debts. That Edward Lane has thus become bound to pay the plaintiffs. The prayer of the petition is, that John and Edward M. Lane be condemned in solido’ to pay the amount of the judgment, interest and costs. That the plaintiffs be declared to have a judicial mortgage upon the estate. That it be sold to satisfy their claim; and that they have leave to issue execution against Edward M. Lane for the deficit, if any there might be, after the sale of the mortgaged property.
John Lane being an absentee, a curator ad hoc was appointed to represent him, who pleaded a general denial. Edward M. Lane appeared and pleaded a general denial. He also answered, that should the plaintiffs succeed in fixing a liability on him in consequence of the purchase from John Lane, they are only entitled to come in concurrently with the rest of the creditors of John Lane, mentioned in the act of sale.
In the court below there was a judgment in substantial accordance with the prayer of the petition. The curator and Edward M. Lane have appealed.
The points made by the appellants will be considered in the order in which they were presented in argument.
1st. The district court erred in deciding that the recording of an order of the judge, granted in chambers, decreeing the execution of a foreign judgment, if made in the proper mortgage office, created a judicial mortgage, without any record of the foreign judgment itself.
The article 3289 C. C. declares, that the judicial mortgage is that resulting horn judgments; and in the article 3294 it is said, a mortgage results from- judgments rendered in other States of the Union, or foreign countries, only in so far as their execution has been ordered by a tribunal of this State in the manner prescribed by the law. The Civil Code had required that judicial mortgages should be recorded in the mortgage office, in order to prejudice third persons. Art. 3314. But the Code of Practice enacts that “definitive judgments, though entered on the docket of the judgments of the court, shall not hereafter affect the property of the" person against whom such judgments have been rendered, all laws to the contrary notwithstanding. Such judgment must be recorded at the office of mortgages, in order to give the party a judicial mortgage pursuant to the provisions of the law.” In article 3330 C. C. it is said, to obtain an inscription of a public act or judgment, the creditor, either in person or by an *227 •agent, shall present an authentic copy of .the act or judgment to be recorded, to the register of mortgages of the place where the inscription is to be made.
In the present case the judgment of the Circuit Court of the United States was not recorded verbatim. The plaintiffs furnished to the recorder a certified copy of the decree of the district court rendering the judgment executoiy. This decree is entitled as in the suit of A. Bonafé and another v. John Lane; it states that it is rendered upon a record and judgment from the United States Circuit Court in the State of Mississippi, which it decrees executory in this State; it directs a writ of seizure and sale to issue against John Lane for the sum of $2818 86, with interest at eight per cent from the 9th day of May, 1845, until paid, and $159 and the costs of the executoiy proceedings.
By recording this decree the public was informed of all the essential particulars of which they would have been informed if the Mississippi judgment had been recorded verbatim,. It has never been held, that to make a valid inscription .of a conventional mortgage, an entire copy of the authentic act in which it is granted should be spread upon the public record. The object of registration is public notice, with reasonable certainty, of the substantial particulars of the mortgage; and when this is done the purpose of the law is satisfied. Suppose a mortgage creditor should go to the mortgage office, and verbally state to the recorder all the essential particulars of the authentic act of mortgage or judgment under which he claimed, and the recorder, instead of requiring a copy of the act or judgment, as he might do, (art. 3330, 3331,) should inscribe the particulars as stated ; this would be good. Such is the spirit of what we held in Ells v. Sims, 2d Ann. 254.
2d. The district court erred in rendering a judgment against John Lane, (and upon that judgment a judgment against Edward M. Lane,) for more than $1409.
If we were to interpret the Mississippi judgment as we would a judgment rendered in like terms in this State, we might, perhaps, hold that it was not a judgment in solido against John Lane and his co-defendant in that suit, A. W. Chapman. Whether we would be permitted to take notice of the meaning and legal effect of such a judgment in Mississippi, as a matter controlled by the common law, and under that system condemning Lane and Chapman in solido, is a point which we need not decide. For the language used in the act of sale is a sufficient recognition of the correctness of the legal interpretation put upon the Mississippi judgment by the decree of the district judge. The same observation applies to the objections raised as to the interest and costs.
3d. The district court erred in rendering a judgment against Edward M. Lane personally upon his promise made to John Lane, that he would apply the income of the property purchased to the payment of his debts due to the Merchants’ Bank of New Orleans, to John C. McLemore, to Geo. T. Williams, and to Bonafé & Co.
Under this point the counsel for the defendants present various propositions. The first is, that without the stipulation in the act of sale, the crops when gathered by Edward M. Lane would have been absolutely his property. That the stipulation did not have the force of an obligation as between Edward M. Lane and the creditors, until it was accepted by the creditors; therefore, any crop gathered prior to the acceptance of the stipulation was Edward Lane’s property; and all the crops claimed by the plaintiffs were gathered before the institution of this suit, which is the only acceptance by Bonafé and Co.
Before considering this proposition, it is proper to direct our attention to the terms of the instrument under which the plaintiffs claim.
*228 It is a notarial deed, executed by John Lane and wife on the one part, and Edward M. Lane on the other, in which John Lane declares, that for the consideration thereinafter expressed he has bargained, sold, delivered Sec., unto Edward M. Lane purchasing, accepting, acknowledging possession Sec., all the following described property. The act then enumerates certain tracts of land in the parish of Madison, amounting to upwards .of nin.e hundred aci’es, some sixty slaves besides their children, whose names are not designated, and all other slaves attached to the plantation whose names may have been omitted, with the live stock, implements &c.; to have and to hold to the said vendee &c., free from all mortgages and incumbrances except those thereafter expressed. Then comes the following clause: The condition for which this sale is made is declared to be as follows, viz.: the sum of $1000 cash in hand paid by the said Edward M. Lane to the said John Lane, the receipt whereof is hereby acknowledged, and the said Edward M. Lane takes the above described and sold property subject to and liable for the following mentioned debts of the said John Lane, to wit: A number of mortgage or judicial mortgage debts are then enumerated; that to the plaintiffs being mentioned last. After which is the following clause, ‘fit being distinctly understood and declared by the parties to this act that the said Edward M. Lane does not in any manner become personally responsible for any part of any of said mortgage debts, but only that the property hereby sold shall remain liable for them, and the products thereof shall be applied to the payment and satisfaction of the same.”
Whatever the secret intentions of the parties may have been, we shall, in the interpretation of the deed, assume that the transaction was real and in good faith.
The plaintiffs act in affirmance of the contract; and the defendants do not pretend, nor would it lie in their mouths to say, that fhe deed was simulated, or made to defraud John Lane's creditors.
What then is the legal effect of the deed between the parties themselves. Undoubtedly the covenant to apply the products, by which we understand the crops and fruits of the plantation, to the payment of John Lane's creditors, was a part of the consideration of the sale. It was a covenant for the benefit of the vendor, who was personally bound for those debts; and to say that, under this covenant, as between the vendor and vendee, the latter could divert any of the crops to his own use, until the enumerated creditors of the vendor were fully paid by the application of the crops, is utterly inadmissible under a reasonable and fair interpretation of the covenant. And this interpretation is not weakened by considering the vendee’s position, as the purchaser of land encumbered by mortgages in favor of those creditors. The payment of those creditors was, therefore, a matter in which vendor and vendee were mutually interested : the one to discharge his personal liability, the other to relieve his property from encumbrance
Such being the intention of the contracting parties, and their duty inter se, how does the matter stand as to the creditors. Here is a stipulation for their benefit. The covenant which Edward made with John Lane was to apply all the crops to the payment of the enumerated debts. Now, although those creditors were not parties to that contract, the law authorises them to avail themselves of its benefit. A person may also in his own name make some advantage for a third person the condition or consideration of a commutative contract or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked. Art. 1884. Again in article 1896 it is said, a contract in which anything is stipulated for the *229 benefit of a third person, who has signified his assent to accept it, cannot be revoked, as to the advantage stipulated in his favor, without his consent. Moreover, the lawgiver, not content with recognising the right and leaving the remedy to implication, has in express terms given the benificiaiy an action to enforce it. C. P. 35.
Now it is obvious, that the covenant being one in which, as we have already noticed, the vendor and vendee had both an interest, there could be no revocation of that covenant without their mutual consent. No such consent to revoke is proved; and it is therefore clear that the plaintiffs in this cause, having signified their assent to accept the benefit stipulated in their favor, the covenant, as to them, now stands irrevocable.
Whether, under the provisions of our Civil Code and Code of Practice, which are conceived in a highly equitable spirit, and have not followed literally the terms of the Napoleon Code, Edward and John Lane could revoke the stipulation as concerns the other creditors named in the deed, until they have had notice of its provisions and an opportunity of adopting or declining its benefit, is a question upon which it is not now necessary to express an opinion.
We therefore conclude, that Edward M. Lane has no right to treat as his own, the crops gathered before the plaintiffs accepted the stipulation; but that on the contrary, it must be considered as a fund in his hands in which they have an interest, with a right to enforce its appropriation pursuant to the covenant.
The next proposition advanced by the counsel is, that the stipulation is in favor of all the creditors, and not of any one of them; that it must be accepted by all before it is complete and binding; and that payments under it must be made to all, or with the express or implied consent of all, and not to any one of them.
We are of opinion, that it was not necessary that all the creditors should accept, in order to enable one or more to avail themselves of the intended benefit. We consider the contract as malting the future crops a fund to be applied for the benefit of all the enumerated creditors, if they chose to accept the stipulation, and if any do not avail themselves of it, for the benefit of those who do.
But we are also of opinion, that the plaintiffs, as the matter now stands, have not the right to appropriate the fund absolutely to themselves, in disregard of the other beneficiaries, who for aught that appears to the contrary, have still the right of participating in the fund. It is obvious, that thus far the fund realised from the crops is insufficient to pay the five creditors in full. He who asks equity-must do equity. It will be necessaiy to remand this cause for the purpose of making the other beneficiaries parties. If they decline a participation, the plaintiffs will then have a right to be paid in full.
The next proposition is, that the fund is derived from the mortgaged property, and must be distributed according to the rank of the several mortgages.
The mortgages bear upon the estate, but not on the gathered products of the estate. A mortgage creditor can acquire a mortgage right or privilege upon an ungathered crop, by seizing the land upon which it is growing. C. C. 457. Domat, book 3, tit. 1, sec. 1, par. 7. But when the mortgage creditor remains inactive, and the crop is gathered and sold, there is no right of mortgage or privilege upon the proceeds. If, therefore, there is any preference among the enumerated creditors in the distribution of this fund, it must flow, not from their mere right as mortgages, but from the stipulations of the deed. As the other creditors are not now before us, we think proper to withhold, at present, an opinion upon the point, whether those creditors who choose to accept are to be paid out of the fund concurrently, or in the rank of their respective mortgages.
*230 We see no objection to so much of the decree as orders the property to be seized and sold under the judicial mortgage.
It is therefore decreed, that so much only of the judgment of the district court as condemns the said Edward M. Lane personally, be revei'sed; and that as to the question of the personal liability of the said Edward M. Lane to pay to the said plaintiffs, out of the proceeds of the crops by him received, the amount of the debt of John Lane to the said plaintiffs, ascertained by the decree of the district court in this cause, this cause be remanded for further proceedings according to law, and with leave to the said plantiffs by supplemental petition to make the Merchants’ Bank of New Orleans, John C. McLemore, and George T. Williams, their successors, representatives, or assigns, parties to the said proceedings. And it further decreed, that the costs of this appeal be paid by the plaintiffs.